**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

JOSEPH PAVONE and PAMELA LANG,

     *Plaintiffs,*

  v.

AMERICAN CONTRACT SYSTEMS,
INC. and OWENS & MINOR, INC.,

     *Defendants.*

No.: 2:24-cv-01054-JLB-NPM

## DEFENDANT AMERICAN CONTRACT SYSTEMS, INC.'S MOTION TO DISMISS

Defendant American Contract Systems, Inc. ("ACS") moves to dismiss plaintiffs Joseph Pavone and Pamela Lang's ("Plaintiffs") Complaint for failure to state a claim pursuant to Local Rule 3.01 and Federal Rules of Civil Procedure 8, 10, and 12(b)(6).

### INTRODUCTION

Plaintiffs' Complaint is a classic shotgun pleading that is designed to hide the dearth of actual factual allegations about ACS and its Fort Myers facility, where it sterilizes packages containing medical supplies used at healthcare facilities in Florida and elsewhere using small volumes of ethylene oxide pumped into plastic bags. The Complaint is rife with immaterial, vague, and conclusory allegations not connected to ACS's facility and the process ACS uses to sterilize medical supplies. For example, thirteen paragraphs involve detailed allegations about a sterilization

1

process where large sterilization chambers are filled with ethylene oxide—even though ACS never used this process in Fort Myers. While plaintiffs ultimately concede that the Complaint describes a sterilization process not used by ACS, plaintiffs fail to allege how allegations about an entirely different process have any bearing whatsoever to ACS, its distinct sterilization process, or plaintiffs' claims.

Further, the Complaint recites immaterial facts about a sterilization facility operated by an unrelated company in Willowbrook, Illinois, using a different sterilization process and that uses far larger amounts of ethylene oxide. The Complaint goes into further detail about ethylene oxide concentrations in Illinois, Michigan, and Louisiana, but again, those allegations lack any connection to ACS's sterilization facility at issue or plaintiff Pavone's alleged exposure and cannot form the basis for a claim against ACS. The Complaint attempts to characterize multiple scientific and regulatory sources, yet fails to connect those allegations to ACS's sterilization facility in Fort Myers, Florida or plaintiffs' legal claims. The Complaint also alleges vague and conclusory statements regarding unspecified "toxic levels" of ethylene oxide that resulted in plaintiff Pavone's alleged injury.

To make matters worse, the Complaint incorporates these irrelevant factual allegations into all three causes of action, without specifying which allegations support each claim. The Complaint's multiple causes of action then also impermissibly adopt and incorporate the allegations from the preceding counts, precluding Defendants from discerning facts relevant to the negligent claim versus

2

the ultrahazardous activity claim. Moreover, all but two allegations in the Complaint lump two separate and distinct entities together—repeatedly and collectively referring to the two Defendants as "Defendants"—without identifying which Defendant is responsible for which act or omission or against which of the Defendants each claim is brought. These pleading failures violate Federal Rules of Civil Procedure 8 and 10 and require dismissal of the Complaint.

The specific counts in plaintiffs' Complaint also cannot survive scrutiny under Rule 12(b)(6). In Count I, plaintiffs fail to sufficiently plead facts to support the elements of a negligence claim. The Complaint's boilerplate legal conclusion that ACS owed plaintiffs a duty is noteworthy for its reliance on and reference to a sterilization process not even used by ACS. The Complaint also fails to identify specific alleged acts and omissions by ACS that plausibly suggest that ACS breached any duty to plaintiff. Finally, with respect to causation, plaintiffs rely on unsupported, conclusory allegations about "toxic" ethylene oxide levels that fail to sufficiently plead a causal nexus between ACS's conduct and plaintiff Pavone's alleged injuries.

Count II should be dismissed because the Complaint does not allege facts sufficient to establish that the use of ethylene oxide to sterilize medical equipment is an ultrahazardous activity. The Complaint fails to allege specific facts explaining how ACS's operation of its sterilization facility was an ultrahazardous activity, relying instead on the conclusory statement that ethylene oxide is a carcinogen.

3

Further, allegations in plaintiffs' own Complaint show that using ethylene oxide to sterilize medical equipment is not an ultrahazardous activity: it has value to the community, it is a matter of common usage, and any risk of harm it poses can be eliminated by the exercise of reasonable care.

The remaining Count III, plaintiff Lang's loss-of-consortium claim, is entirely derivative of Counts I and II, and therefore should be dismissed as well.

## FACTUAL BACKGROUND

Plaintiffs filed a Complaint against ACS and Owens & Minor, Inc., alleging that "Defendants opened [an] Industrial Plant in 2010" in Fort Myers, Florida, to sterilize medical equipment, which allegedly emitted ethylene oxide during the sterilization process. *See* Compl. ¶¶ 1-5, 63, 73-74. The Complaint alleges that "[a]s part of their sterilization process, Defendants have emitted thousands of pounds of ethylene oxide ("EtO"), [a] carcinogenic gas, into the air." *Id.* at ¶ 1. The Complaint describes in great detail an immaterial and distinct sterilization process. *Id.* at ¶¶ 17-29. Plaintiffs concede that ACS did not use this sterilization process. *Id.* at n.3 ("Plaintiffs understand Defendants use a slightly modified process through sterilizing packs, but the general EtO sterilization process is described herein."). ACS's sterilization process is significantly different in that it involves filling plastic bags with ethylene oxide, not large chambers, and it involves a substantially smaller amount of ethylene oxide for sterilization, among other ways. The Complaint does not allege how ACS's sterilization process is different from or similar to the other sterilization

process that is detailed at length, and thus provides no factual description of ACS's sterilization process.

The Complaint contains one paragraph alleging facts about the layout of the ACS facility at issue—"The Industrial Plant currently operates four EtO gas injection sterilizers. There are six aeration chambers, one quarantine/storage area, and two dry bed scrubbers." *Id*. at ¶ 64.  The Complaint does not allege any facts pertaining to ACS's sterilization process, including, but not limited to, any sources of ethylene oxide emissions or amount of emissions resulting from the process.

The Complaint alleges that, "[a]ccording to the Environmental Protection Agency ("EPA"), EtO is currently used to treat approximately 50% of sterile medical devices, about 20 billion devices annually." Compl. ¶ 16. Additionally, ethylene oxide "is used to sterilize devices and products that cannot be sterilized using steam or radiation, such as medical and dental equipment and spices." *Id*. at ¶ 15.

Plaintiff Pavone alleges that he "inhaled toxic levels of EtO in and around [plaintiffs'] home and in Fort Myers generally" and "[a]s a result of this exposure, plaintiff [] was diagnosed with non-Hodgkin's lymphoma ["NHL"] in August of 2022." *Id*. at ¶¶ 74-75. The entire Complaint mentions Owens & Minor, Inc. and ACS by name only twice: once in the introduction and another when stating their citizenship. *Id*. at ¶¶ 1, 9-10. The remainder of the Complaint refers to "Defendants" collectively, conflating the alleged conduct of ACS and Owens & Minor, despite them being separate and distinct entities. *Id*. at ¶¶ 1-4, 12-13, 25, 59, 63, 66, 67, 70-

71, 78-81, 87, 90-91. The Complaint does not define "toxic levels." The Complaint does not identify the amount of ethylene oxide to which plaintiff Pavone was allegedly exposed. The Complaint does not identify the amount of exposure that plaintiffs allege is necessary to cause NHL, or the level of exposure that plaintiff Pavone had.

## ARGUMENT

### I.    Plaintiffs' Complaint Is an Impermissible Shotgun Pleading.

The Court should dismiss plaintiffs' Complaint because it is an impermissible shotgun pleading that violates Federal Rules of Civil Procedure 8 and 10. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings violate Rule 8(a)(2) by "fail[ing] to one degree or another … give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Further, to adhere to the pleading requirements of Rule 10(b), a Complaint should present each claim in a "separate numbered paragraph, with each paragraph 'limited to as far as practicable to a single set of circumstances.'" *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). The Eleventh Circuit routinely condemns shotgun-style pleadings because they "waste scarce judicial resources, inexorably broaden[] the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's

6

respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotations omitted).[1]

The Eleventh Circuit identifies four categories of shotgun pleadings, of which three apply here. *See Barmapov v. Amuial*, 986 F. 3d 1321 (11th Cir. 2021) (*citing Weiland*, 792 F.3d at 1321-23). First, the Complaint contains conclusory, vague, and immaterial facts not connected to a specific claim. Second, the Complaint's multiple counts incorporate the allegations of each preceding count. Third, the Complaint sets forth causes of actions against two Defendants without specifying with particularity which Defendant is responsible for each alleged act or omission and without specifying which claim applies to each Defendant.

Courts in this Circuit routinely dismiss such improper pleadings, and the Court should do so here as well. *E.g.*, *Andrews v. Sarasota Cnty. Sch. Bd.*, No. 8:24-CV-00257-KKM-SPF, 2024 WL 4109346, at *1 (M.D. Fla. Sept. 6, 2024); *Behr v. Campbell*, No. 9:18-CV-80221-RLR, 2022 WL 1176949, at *4 (S.D. Fla. Mar. 18, 2022); *Heyward v. Wells Fargo Bank,* No. 8:19-CV-3052-T-35JSS, 2020 WL 9454961, at *1  (M.D. Fla. Jan. 30, 2020), *report and recommendation adopted*, No. 8:19-CV-3052-T-35JSS, 2020 WL 9454937 (M.D. Fla. Feb. 19, 2020).

---

[1] *See also PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010) (quoting *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997)); *A.P. ex rel. Bazerman v. Feaver*, 293 F. App'x 635, 674 n.87 (11th Cir. 2008).

### A.  The Complaint Recites Conclusory, Vague, and Immaterial Facts Not Related to Plaintiffs' Claims.

The Complaint is replete with immaterial facts that have no bearing on plaintiffs' allegations against ACS. All three causes of action are supported by facts that describe a sterilization process that plaintiffs concede ACS has not used. Compl. ¶ 17, n. 3. The "steps" of the alleged sterilization process, *see* Compl. ¶¶ 17-23, and, by extension, the "multiple sources of EtO emissions," Compl. ¶¶ 24-29, resulting from the sterilization process plaintiffs describe are wholly separate from and irrelevant to ACS's sterilization process and plaintiffs' alleged injuries.

As compared to the thirteen paragraphs plaintiffs use to describe an entirely different and immaterial sterilization process, plaintiffs only mention ACS's sterilization facility once and without any explanation regarding its sterilization process or any sources of alleged emissions. Compl. ¶ 64. The Complaint's other immaterial, vague, and conclusory facts about ethylene oxide sterilization and ethylene oxide science, Compl. ¶¶ 14-54, address the different and immaterial sterilization process.

The Complaint also recites facts about sterilization facilities in Willowbrook, Illinois, located approximately 1,300 miles from ACS's facility in Fort Myers, which have no connection to ACS and are not operated by ACS. *See* Compl. ¶¶ 37, 38, 52 and n. 8, 11.[2] The Complaint recites additional irrelevant facts regarding ethylene

---

[2] According to materials cited by plaintiffs, the Willowbrook, Illinois facility has been in operation

oxide concentrations many hundreds of miles away in Illinois, Michigan, and Louisiana, Compl. ¶¶ 52-54, which also lack any connection to ACS's facility in Florida.

The Complaint contains a laundry list of regulations pertaining to ethylene oxide sterilization facilities with no indication of how they relate to plaintiffs' causes of action or the ACS facility in Fort Myers. *See* Compl. ¶¶ 55-62. These vague and immaterial allegations suggesting, but not actually alleging, ACS's lack of compliance with regulations are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov,* 986 F.3d at 1324 (internal quotations omitted).

The Complaint is also riddled with vague and conclusory statements. The Complaint alleges that "throughout the sterilization process, there are multiple sources of EtO emissions," Compl. ¶ 24, but since the Complaint describes a totally different and irrelevant process in preceding paragraphs, this allegation is vague and conclusory in that it relates these immaterial facts to ACS's sterilization facility.

---

for 26 years longer and has emitted double the amount of ethylene oxide—and, at times, substantially more than double—than the Fort Myers, Florida facility is alleged to have emitted here. *See* Compl. ¶ 52 n. 23, Cancer Incidence Assessment near Sterigenics in Willowbrook, IL, 1995-2015, Illinois Department of Public Health, Division of Epidemiological Studies (March 29, 2019), https://dph.illinois.gov/content/dam/soi/en/web/idph/files/publications/sterigenicswillowbrook cancer-investigation-final-0.pdf. This Court may consider materials cited in plaintiffs' Complaint when ruling on a Rule 12(b)(6) motion, without converting it into a motion for summary judgment. *Raziel Ofer v. Stephen T. Milan, et al.*, No. 24-CV-20888, 2025 WL 213834 (S.D. Fla. Jan. 16, 2025).

Further, the Complaint alleges that plaintiff Pavone "inhaled toxic levels of EtO in and around [his] home" and "[a]s a result of this exposure, [he] was diagnosed with non-Hodgkin's lymphoma." Compl. ¶¶ 74, 75. These vague and conclusory allegations are unsupported by any underlying facts related to ACS's sterilization facility. The Complaint does not identify the levels of ethylene oxide in and around plaintiffs' home and merely concludes they were "toxic." The Complaint does not identify what level of exposure one needs to have had to be at risk for NHL and whether plaintiff Pavone indeed was exposed to that level of exposure. The Complaint merely concludes that the alleged "toxic levels" necessarily caused plaintiff Pavone's NHL.

By pleading conclusory, vague, and immaterial facts about a sterilization process not used by ACS, other sterilization facilities, ethylene oxide concentrations in other states, and "toxic" levels of exposure, the Complaint is a shotgun pleading that violates Rule 8. *Waxman v. Equitable Life Assurance Soc'y of U.S.*, 2008 WL 619321, at *2  (S.D. Fla. Mar. 4, 2008) ("The Eleventh Circuit has frowned on such 'shotgun pleading,' as it prevents defendants from understanding the nature of their alleged wrongdoing, thereby preventing them from forming reasonable responses to the allegations") (citing *Beckwith v. Bellsouth Telecomms.*, Inc., 146 F. App'x. 368, 371 (11th Cir. 2005)); *Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, No. 17-CV-22462-UU, 2018 WL 7287192, at *7 (S.D. Fla. Jan. 31, 2018) (granting motion to dismiss).

10

**B.    The Complaint Impermissibly Incorporates Conclusory, Vague, and Immaterial Facts into All Counts and Incorporates Prior Counts into Latter Counts.**

The Complaint is a shotgun pleading that violates Rule 10(b) because plaintiffs assert various counts but incorporate all of the preceding factual allegations of each cause of action into each subsequent cause of action. *See* Compl. ¶¶ 77, 83, and 89 (All three causes of action "re-allege[] each [preceding] paragraph as though fully set forth [t]herin."). All three causes of action then also incorporate the immaterial, vague, and conclusory facts alleged in paragraphs 1-76 of the Complaint, without "any effort to connect or separate which of those [] factual allegations relate to a particular [cause of action]." *Barmapov*, 986 F.3d at 1325; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (dismissing a shotgun pleading where "a reader of the Complaint must speculate as to which factual allegations pertain to which count"); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (dismissing as a shotgun pleading a Complaint that incorporated all prior factual allegations into each count and all prior counts into subsequent counts).

Courts in this Circuit routinely dismiss such structurally flawed pleadings, and another court in this district recently did so with respect to a Complaint that improperly mixed factual allegations pertaining to negligence-based claims and claims alleging ultra-hazardous activity, as plaintiffs do here. *See, e.g., Jurec v. Walter P. Rawl & Sons, Inc.*, No. 3:18-CV-591-J-32JRK, 2019 WL 1026378, at *5 (M.D. Fla. Jan. 29, 2019) (dismissing Complaint where the strict liability ultra-hazardous count

11

"improperly incorporate[d] by reference the allegations of the negligence count")

(*citing Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295

(11th Cir. 2002)) *report and recommendation adopted*, No. 3:18-CV-591-J-32JRK, 2019

WL 1014359 (M.D. Fla. Mar. 4, 2019).

### C.    The Complaint Fails to Differentiate Between Defendants.

Although the Complaint contains close to 100 paragraphs, it mentions Owens

& Minor and ACS by name only twice: once in the Introduction and another when

stating their citizenship. Compl. ¶¶ 1, 9-10. The rest of the Complaint refers to

"Defendants" as a single entity, conflating the alleged conduct of the two different

named Defendants. Shotgun pleadings that lump both Defendants together without

alleging their specific, individual responsibility for the alleged acts or omissions

should be dismissed. *E.g., Andrews,* 2024 WL 4109346, at *1 (dismissing Complaint

against two Defendants as "a prototypical shotgun pleading" for failing to

differentiate "which of the defendants are responsible for which acts or omissions or

which of the defendants the claim is brought against").

### II.    Counts I, II, and III Warrant Dismissal for Failure to State a Claim.

The Complaint should also be dismissed because plaintiffs fail to allege facts

sufficient to state a claim for negligence (Count I), ultrahazardous activity (Count II),

and loss of consortium (Count III).

To survive a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level…" *Twombly*, 550 U.S. at 555. It is not sufficient for a Complaint to "plead[] facts that are 'merely consistent with' a defendant's liability" because it "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court may dismiss a Complaint when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### A. Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Negligence (Count I).

To state a claim for negligence, plaintiffs must allege that: (1) ACS owed him plaintiffs a duty; (2) ACS breached the duty, including "factual allegations to support the negligence sub-claims;" and (3) ACS's breach caused the injuries alleged. *See*

*Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *2 (S.D. Fla. June 14, 2012).

The Complaint fails to allege facts sufficient to establish that ACS owed and breached a duty to plaintiffs because, as described *supra* in § I.C., it improperly lumps two Defendants together. *See, e.g., Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (dismissing negligence claim because "it is unclear what either of the Defendants' respective duties are"); *see also Wolicki–Gables v. Arrow Int'l*, No. 8:08–CV–151–T–17MSS, 2008 WL 2773721 (M.D. Fla. June 17, 2008) (dismissing negligence claim that failed to specifically identify the relationship of the Defendants to the product and Defendants' relationship to one another). Plaintiffs further fail to state a negligence claim against Defendants because plaintiffs describe and rely upon a sterilization process not used by ACS. Compl. ¶¶ 17-29. *See supra* § I.A. Plaintiffs' dependence on allegations about an immaterial sterilization process precludes ACS from identifying what it is about ACS's sterilization process, if anything, that supports plaintiffs' conclusory allegations that ACS owed a duty to plaintiffs.

Plaintiffs also fail to plead facts that describe with sufficient specificity to show how ACS's conduct allegedly breached an applicable duty of care. Instead, the Complaint recites a laundry list of generic alleged acts and omissions. *See* Compl. ¶ 80, a.-m. For example, the Complaint is devoid of specific facts that pertain to ACS and its sterilization facility to support the allegation that Defendants "[f]ail[ed] to adequately track, record, and/or monitor the amounts or levels of emissions of EtO

from the Industrial Plant." Compl. ¶ 80, e. The Complaint does not allege with particularity what ACS failed to "track, record, and/or monitor," how, and to what extent, it failed to do so, and how this alleged failure to "track, record, and/or monitor" caused plaintiffs' injuries. *See, e.g., Royal Caribbean Cruises, Ltd. v. Jackson, 921 F. Supp. 2d 1366, 1371 (S.D. Fla. 2013)* (dismissing complaint for failure to state a claim because plaintiffs "allege[d] numerous failures regarding the provision and maintenance of equipment; yet, [plaintiffs] alleged no facts that indicate that their injuries were caused by equipment failures"). These "naked assertion[s]" require "some further factual enhancement" and fail to satisfy the quantum of factual specificity required by Rule 12. *Twombly*, 550 U.S. at 557.

With respect to causation, the complaint lacks the requisite factual predicate to plead a causal connection between ACS's alleged conduct and plaintiffs' injuries. *See, e.g., Rounds v. Genzyme Corp.*, No. 8:10-CV-2479-T-23, 2011 WL 692218, at *2 (M.D. Fla. Feb. 18, 2011) (dismissing complaint that failed to properly allege causation), *aff'd on other grounds*, 440 F. App'x 753, 755 (11th Cir. 2011); *Isberner v. Celebrity Cruises, Inc.*, No. 06-60447, 2006 WL 4005569, at *4 (S.D. Fla. Dec. 21, 2006) (dismissing negligence claims when plaintiff "failed to allege facts sufficient to show that [d]efendant's actions were negligent, and [] failed to specify how [d]efendant's own actions proximately caused [p]laintiff's injuries").

In its attempt to plead causation, the Complaint alleges that "[s]ince approximately June 2010…the Industrial Plant has used and thus emitted

15

approximately, 2,500 pounds of EtO into the air surrounding the Industrial Plant." Compl. ¶ 65. The Complaint then alleges that plaintiff Pavone "inhaled toxic levels of EtO in and around [his] home" and "[a]s a result of this exposure, [he] was diagnosed with non-Hodgkin's lymphoma." Compl. ¶¶ 74, 75. These vague and conclusory allegations are too tenuous to plausibly suggest that plaintiff's NHL was a direct and proximate result of his alleged exposure to ethylene oxide allegedly emitted from ACS's sterilization facility.[3] Plaintiffs' Complaint does not recite facts pertinent to ACS's facility or process to link any alleged negligent acts or omissions of ACS to plaintiffs' injuries; instead, at most, the Complaint improperly links ethylene oxide, a substance with "unreasonably dangerous side effects," Compl. ¶ 78, to plaintiffs' injuries. *See Lapidus,* 2012 WL 2193055, at *3 ("Although Plaintiff pled, in a conclusory manner, that there were "high amounts of sulphur dioxide gas" present during the excursion, he fails to allege that the levels were unreasonably dangerous…"). The Complaint is devoid of any alleged facts to plead a causal connection—for example, the rate at which the ethylene oxide was allegedly emitted;[4] the movement of the ethylene oxide allegedly emitted by ACS when in the

---

[3] This is especially tenuous because ethylene oxide is present in the ambient air and naturally produced by multiple other sources, such as car exhaust. *See* Compl. ¶ 30 n. 5, National Library of Medicine, National Center for Biotechnology Information. Compound Summary-Ethylene Oxide. Available online: https://pubchem.ncbi.nlm.nih.gov/compound/Ethylene-Oxide.
[4] The Complaint alleges, "Since approximately June 2010, when the Industrial Plant commenced operations the Industrial Plant has used and thus emitted approximately, 2,500 pounds of EtO into the air surrounding the Industrial Plant," Compl. ¶ 65, but it does not allege the rate at which the 2,500 pounds was purportedly emitted.

air;[5] the amount of ethylene oxide exposure necessary to allegedly cause cancer; and the amount of ethylene oxide plaintiff Pavone allegedly inhaled.

The Complaint also fails to state facts to support its conclusion that plaintiff inhaled "toxic levels" of ethylene oxide and provides no facts related to the amount of ethylene oxide in the ambient air near the facility or at plaintiff's home.[6] *Cf. Letart v. Union Carbide Corp.*, 461 F. Supp. 3d 391 (S.D.W. Va. 2020) (dismissing medical monitoring claim where plaintiffs failed to plead a level of exposure to ethylene oxide). While it may be theoretically possible that plaintiff Pavone's cancer was caused by ethylene oxide from ACS's sterilization facility, Rule 8 mandates that plaintiff allege an adequate factual basis to make the elements of the claim plausible. *Twombly*, 550 U.S. at 557-558 (holding that "something beyond the mere possibility of [causation] . . . must be alleged" and the allegations must support a plausible claim for relief). Plaintiffs fail to include "[f]actual allegations" that "raise a right to relief above the speculative level," *id.* at 555, and instead rely on an "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has held inadequate, *Iqbal*, 556 U.S. at 678.

---

[5] The Complaint vaguely alleges that "[o]nce EtO is released into the air, it can be moved around by the wind until it ultimately breaks down," Compl. ¶ 32, but plaintiffs do not make any allegations that would address whether environmental conditions were sufficient to have resulted in an actual exposure to ethylene oxide from ACS's facility sufficient to cause plaintiff's NHL. It is possible that winds moved the ethylene oxide allegedly emitted from ACS's facility in the opposite direction from plaintiffs' neighborhood, but no facts specific to plaintiff Pavone's exposure were alleged.
[6] The complaint alleges facts regarding ethylene oxide concentrations in Illinois, Michigan, and Louisiana, Compl. ¶¶ 52-54, which are irrelevant here.

**B.    Plaintiff Fails to Allege Facts Sufficient to State a Claim for Ultrahazardous Activity (Count II).**

The Complaint fails to state an ultrahazardous activity claim because plaintiffs plead facts demonstrating that sterilization of medical equipment is not ultrahazardous. Plaintiffs plead that sterilization using ethylene oxide is a matter of common usage, Defendants could have mitigated any associated risks by exercising reasonable care, and medical sterilization offers value to the community, including by "steriliz[ing] devices and products that cannot be sterilized" by other means. *See* Compl. ¶¶ 15, 16, 78, 80, 88. The Complaint also fails to offer any facts pertinent to ACS's sterilization process regarding the risk or degree of harm.

Few Florida cases have dealt with ultrahazardous activity, but those that do have applied strict liability in circumstances that are inapposite. *SDI Quarry v. Gateway Ests. Park Condo. Ass'n*, 249 So. 3d 1287, 1295 (Fla. Dist. Ct. App. 2018) (blasting mines); *Old Island Fumigation, Inc. v. Barbee*, 604 So. 2d 1246, 1247 (Fla. Dist. Ct. App. 1992) (fumigating within a residential condominium); *Cities Serv. Co. v. State*, 312 So. 2d 799 (Fla. Dist. Ct. App. 1975) (impounding billions of gallons of phosphatic slimes behind a dam). The Complaint fails to show how sterilization of medical devices resembles any of these high-risk activities.[7]

---

[7] Plaintiffs' claim also improperly relates to ethylene oxide as a substance, Compl. ¶¶ 83-88, rather than the sterilization process using ethylene oxide. *See, e.g., Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1181 (7th Cir. 1990) ("ultrahazardous or abnormal dangerousness is, in the contemplation of law at least, a property not of substances, but of activities").

Courts consider six factors when evaluating whether an activity is ultrahazardous:

> (a) the activity involves a high risk; (b) the potential harm is likely to be great; (c) the risk cannot be eliminated by reasonable care; (d) the activity is a matter of common usage; (e) the activity is inappropriate in the community; and (f) the activity has substantial value to the community.

*See St. Cyr v. Flying J Inc.*, No. 3:06CV13 J33TEM, 2006 WL 2175662, at *3 (M.D. Fla. July 31, 2006) (citing Restatement (Second) of Torts § 520 (1977)). Ordinarily, several factors will be required to impose strict liability, and Florida courts will reject ultrahazardous counts at the motion to dismiss phase where—as here—plaintiffs fail to plead multiple factors. *E.g., id.* (dismissing complaint that failed to allege some but not all factors); *Jurec v. Walter P. Rawl & Sons, Inc.*, No. 3:18-CV-591-J-32JRK, 2019 WL 1026378, at *4 (M.D. Fla. Jan. 29, 2019) (same), *report and recommendation adopted*, No. 3:18-CV-591-J-32JRK, 2019 WL 1014359 (M.D. Fla. Mar. 4, 2019).

The Complaint fails to allege several factors that would permit the application of strict liability. Factor (c) supports strict liability where there is an "inability" to take reasonable precautions to exercise reasonable care. Restatement (Second) of Torts § 520 (Comment on Clause (c)) (1977). Plaintiffs, however, explicitly plead that Defendants could have mitigated harm by exercising reasonable care, including "adequately track[ing], record[ing], and/or monitor[ing]" emission levels; reporting fugitive emissions; using "safer, alternative methods to sterilize devices," and providing "adequate cautions and warnings." Compl. ¶ 80.

Recently, the Middle District of Florida dismissed a complaint featuring analogous and mutually exclusive claims of negligence and ultrahazardous activity. *Jurec*, 2019 WL 1026378, at *4 ("The alleged ways in which Defendant breached its duty of reasonable care, alleged in Count I [Negligence] and incorporated in Count II [Ultra-hazardous activity], weigh against finding that there is an inability to eliminate the risk").[8]

Factors (d) and (f) likewise do not support a finding of strict liability where an activity is a "matter of common usage," and it offers "value to the community." Restatement (Second) of Torts § 520 (Comment on Clauses (d) and (f)) (1977). "An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community." *Id.* Moreover, an activity offers value where "the community is largely devoted" to the activity, despite the alleged danger. *Id.* Plaintiffs concede that half of the medical devices—"about 20 billion devices annually"—are sterilized with ethylene oxide, and that "EtO is used to sterilize medical equipment that cannot be sterilized using steam or radiation" Compl. ¶¶ 15-16. Plaintiffs' own allegations demonstrate that the use of ethylene oxide is widespread and offers significant value to the community at large.

Finally, factors (a) and (b) regarding the risk and degree of harm also do not

---

[8] Notably, that court also held that "the strict liability count (Count II) improperly incorporate[d] by reference the allegations of the negligence count (Count I), which result[ed] in Count II containing irrelevant legal conclusions and facts." *Jurec,* 2019 WL 1026378, at *5 (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F. 3d 1293, 1295 (11th Cir. 2002)). Plaintiffs commit the same pleading error here.

support the application of strict liability. Plaintiffs assert "[t]he use of EtO involves a high degree of risk of harm to a person," Compl. ¶ 84, but this allegation is largely based on immaterial allegations about a distinct sterilization process—that plaintiffs admit ACS did not use. *See id.* at ¶¶ 17-29. Moreover, although the Complaint maintains, "[t]he harm posed is great because EtO is a known carcinogen," *id.* at ¶ 84, plaintiffs cite no authority that carcinogenicity is the type of harm that Florida courts consider appropriate for strict liability.[9] The Court should disregard plaintiffs' unsupported allegations because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to assert any well-pleaded allegations pertaining to factors (a) or (b).[10]

### C. Plaintiff Fails to Plead Sufficient Facts to State a Plausible Claim for Loss of Consortium (Count III).

Loss of consortium is a derivative claim, predicated on the success of the underlying substantive claims of the married individual's spouse. *See Kimbrell v. Paige*, 448 So. 2d 1009, 1013 (Fla. 1984). Because plaintiff Pavone cannot state viable claims of negligence and ultrahazardous activity, this Court should dismiss plaintiff

---

[9] Plaintiffs' own cited literature does not support the conclusion of carcinogenicity at a level potentially relevant to their claims as the literature involves extremely high levels of ethylene oxide in occupational settings. *See* Compl. ¶¶ 40-41.

[10] Even if the Court concludes that Defendants' specific sterilization process poses a high risk of harm, the Court should still dismiss plaintiffs' Complaint given multiple factors weigh against strict liability. *See, e.g.*, *St. Cyr*, 2006 WL 2175662, at *3 n.6 (dismissing strict liability claim even though danger "unequivocally involves high degree of risk of great harm").

Lang's derivative claim for loss of consortium against ACS. *E.g., Bello v. Johnson*, 442 F. App'x. 477, 480 (11th Cir. 2011) (affirming dismissal of loss of consortium claim because plaintiff failed to state a substantive cause of action); *Byrnes v. Small*, 60 F. Supp. 3d 1289, 1301 (M.D. Fla. 2015) (same).

## CONCLUSION

For the foregoing reasons, ACS respectfully requests that this Court enter an order dismissing plaintiffs' Complaint as an impermissible "shotgun pleading." The Court should also dismiss Plaintiffs' claims for negligence (Count I), ultrahazardous activity (Count II), and loss of consortium (Count III) for failure to state a claim pursuant to Rule 12(b)(6).

Date: January 23, 2025                                 Respectfully submitted,

Michael J. Thomas                                     /s/ Robert E. Johnston
PENNINGTON LAW                                        Robert E. Johnston, Esq.
215 South Monroe Street                               William J. Cople III, Esq.
Suite 200                                             Andrew L. Reissaus, Esq.
Tallahassee, FL 32301                                 HOLLINGSWORTH LLP
Telephone: (850) 222-3533                             1350 I Street, NW
mike@penningtonlaw.com                                Washington, DC 20005
                                                      Telephone: (202) 898-5800
                                                      rjohnston@hollingsworthllp.com
                                                      wcople@hollingsworthllp.com
                                                      areissaus@hollingsworthllp.com

*Attorneys for Defendants*

## LOCAL RULE 3.01(G) CERTIFICATION

In accordance with Local Rule 3.01(g), counsel for Defendant ACS certifies that Defendant conferred with counsel for Plaintiffs via videoconference on the issues raised in this motion. Despite their best efforts, the parties were unable to reach a resolution.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 23, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Robert E. Johnston
Robert E. Johnston, Esq.