UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH PAVONE, PAMELA
LANG,

        Plaintiffs,

    v.

                               Case No. 2:24-cv-1054-KCD-NPM

AMERICAN CONTRACT
SYSTEMS, INC., OWENS &
MINOR, INC.,

        Defendants.

_____/

## ORDER

This toxic tort case arises from exposure to ethylene oxide ("EtO") near a sterilization plant in Fort Myers, Florida. Defendants American Contract Systems, Inc. ("ACS") and Owens & Minor, Inc. allegedly own and operate the facility. (Doc. 42 ¶ 17.)[1] Joseph Pavone and Pamela Lang live within a mile of the plant. Pavone has developed non-Hodgkin lymphoma, purportedly due to chronic exposure to dangerous levels of EtO.

Pavone brings claims for negligence (Count I) and ultrahazardous activity (Count II), while Lang seeks loss of consortium damages for the injuries to her husband (Count III). ACS now moves to dismiss the amended

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

complaint under Fed. R. Civ. P. 12(b)(6).[2] (Doc. 46.) Plaintiffs have responded (Doc. 51), making this matter ripe. For the reasons below, ACS's motion is **DENIED**.

## I. Background

These are the relevant facts from the complaint, which must be taken as true at this stage. Pavone moved to Fort Myers in 2007. Three years later, an industrial plant that sterilizes medical devices opened nearby. (Doc. 42 ¶ 1.) As part of the sterilization process, the plant emits EtO—an odorless, colorless, and highly carcinogenic gas. According to the United States Environmental Protection Agency, EtO is a known carcinogen. And regular, long-term exposure to EtO can cause certain cancers, including blood, lymphoid, and breast cancer.

Plaintiffs allege that companies in the United States became aware of EtO's carcinogenic effects in 1977, and since that time, numerous agencies have confirmed EtO's dangerous properties. (*Id.* ¶¶ 68-82.) Nevertheless, Defendants disregarded EtO's harmful properties, released it into the surrounding community at the rate of thousands of pounds a year, and continue to do so. Although Defendants' plant opened in 2010, they did not

---

[2] Owens & Minor has also moved to dismiss the complaint (Doc. 48), but the Court will consider that motion in a separate order.

attempt to mitigate the EtO discharge until 2023, when emission abatement systems were implemented.

Plaintiffs have lived near the sterilization plant for over a decade, resulting in daily EtO exposure. During that time, the EPA found an elevated cancer risk for the surrounding neighborhoods and warned Fort Myers residents. (*Id.* ¶ 87.) Pavone was diagnosed with non-Hodgkin's lymphoma in 2022. Neither Pavone nor Lang was on notice (or aware) that they had been inhaling toxic levels of EtO for years.

ACS moves to dismiss the complaint, arguing that Plaintiffs have failed to sufficiently plead their claims. (Doc. 46.)

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." *Id.* In assessing a motion to dismiss, conclusory allegations are disregarded, and the remaining facts are viewed in the light most favorable to the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint is sufficient if what remains "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss should not be granted when the plaintiff has

provided facts that raise a right to relief above the speculative level. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Discussion

### A. Negligence (Count I)

To state a claim for negligence, Plaintiffs must allege that: (1) ACS owed them a duty; (2) ACS breached that duty; and (3) the breach caused the injuries alleged. *Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *2 (S.D. Fla. June 14, 2012). The causation prong is at issue here. According to ACS, the complaint fails to plead an adequate factual basis to connect its conduct and Pavone's injuries. Plaintiffs, instead, rely on unsupported and conclusory allegations about "toxic" EtO levels. ACS maintains that Plaintiffs must include more facts—such as the amount of EtO exposure necessary to cause or increase the risk of non-Hodgkin lymphoma; the background risk of non-Hodgkin lymphoma without exposure to EtO; the rate at which EtO was allegedly emitted via ACS's sterilization process; or the amount of EtO that reached Pavone. (Doc. 46 at 6-7.)

To prove causation, a plaintiff must establish "a cause and effect relationship . . . between the alleged tortious conduct and the injury." *Bell v. Beyel Bros., Inc.*, No. 2:16-CV-14461, 2017 WL 1337267, at *3 (S.D. Fla. Apr. 7, 2017). This requires "a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justifie[s]

4

imposing liability (i.e., proximate cause)." *Id.* "The issue of proximate cause is generally a question of fact concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005). Causation is present where the court can reasonably infer injury from the alleged negligence. *Bell*, 2017 WL 1337267, at *3.

Accepting Plaintiffs' allegations as true, as the Court must, they have adequately shown causation. Plaintiffs say they inhaled toxic levels of EtO around their home for over a decade, which led to Pavone's cancer diagnosis. (Doc. 42 ¶¶ 93-97.) Plaintiffs allege various ways to connect ACS to this injury, including that EtO is a known carcinogen, and ACS knew the danger its operation posed to the Fort Myers community. (Doc. 42 ¶¶ 3, 67-92.) Plaintiffs further detail what occurs with EtO once it is emitted into a community, the impact it can have on those living close by, ACS's specific facility and its emissions, Plaintiffs' exposure to the emissions, and Pavone's resulting cancer diagnosis. Plaintiffs also point to years of research and documentation showing that EtO emissions from sterilization facilities result in an increased cancer risk in surrounding communities. (*Id.* ¶¶ 55-86.)

ACS's argument that Plaintiff must allege more, such as wind patterns and the duration of its emissions, is beyond what the Federal Rules require. (Doc. 46 at 7-8.) At bottom, the complaint satisfies notice pleading standards.

While ACS can certainly challenge whether EtO emissions in fact caused Pavone's cancer, the Court declines the invitation to require Plaintiffs to provide expert-level causation analysis in their pleadings. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."). Many of the cases ACS cites are assessing summary judgment and *Daubert* challenges, so they are largely inapplicable and unhelpful. (*See, e.g.*, Doc. 46 at n.6.) Count I is sufficiently pled.

### B. Ultrahazardous Activity (Count II)

In Count II, Plaintiffs bring a claim for ultrahazardous activity. Florida courts have adopted the doctrine of strict liability for ultrahazardous or abnormally dangerous conduct. *Peoples Gas Sys. v. Posen Const., Inc.*, No. 2:11-CV-231-FTM-29, 2011 WL 5525346, at *3 (M.D. Fla. Nov. 14, 2011). Under such a claim, liability is imposed on a party "although he has exercised the utmost care to prevent the harm to the plaintiff that has ensued." Restatement (Second) of Torts § 519 cmt. d (1977).

Florida courts consider six factors when evaluating whether an activity is ultrahazardous:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Peoples Gas*, 2011 WL 5525346, at *3. Even if the activity has substantial value to the community, if it also involves a high degree of risk of harm, it may be appropriate to impose liability. *Hutchinson v. Capeletti Bros.*, 397 So. 2d 952, 953-54 (Fla. Dist. Ct. App. 1981). "The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care." *Peoples Gas*, 2011 WL 5525346, at *3.

ACS maintains that the complaint "fails to plead any of the six factors that would permit the application of strict liability." (Doc. 46 at 10.) Not so. Plaintiffs march through each of the factors in paragraphs 106 to 111. (Doc. 42.)

On a more granular level, ACS takes issue with factor (c)—the inability to eliminate the risk by the exercise of reasonable care—because the complaint

contains inconsistent allegations. On the one hand, Plaintiffs claim the harm from EtO cannot be eliminated. (Doc. 42 ¶ 108.) But in the negligence count, they allege ACS could have mitigated the harm by exercising reasonable care. (*Id.* ¶ 10.) According to ACS, courts have rejected ultrahazardous claims for the same issue. (Doc. 46 at 11 (citing *Jurec v. Walter P. Rawl & Sons, Inc.*, No. 3:18-CV-591-J-32JRK, 2019 WL 1026378, at *4 (M.D. Fla. Jan. 29, 2019)). But *Jurec* is not analogous. There, the plaintiff incorporated the inconsistent negligence allegations into the strict liability count. *Id.* Plaintiffs have not done so here. And to the extent the allegations are conflicting, the Federal Rules expressly allow alternative and inconsistent claims. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

The remaining factors are also insufficiently pled, according to ACS, because Plaintiffs provide no facts or authority to show "its sterilization is inappropriate where it is conducted." (Doc. 42 at 12.) But under the notice pleading standard, such detail is not necessary. The complaint must simply give the defendant fair notice of what the claim is and the ground on which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Plaintiffs have done so here. ACS's arguments also raise factual issues that the Court cannot (and will not) resolve now. *See Graziuso v. Ocean Reef Club, Inc.*, No. 06-10085-CIV, 2007 WL 9702421, at *3 (S.D. Fla. Jan. 18, 2007) (allowing ultrahazardous claim to

proceed where the amended complaint alleged the Restatement factors and sufficient facts supporting those factors).

### C. Loss of Consortium (Count III)

Finally, ACS attacks Lang's loss of consortium claim because, in the absence of a viable tort against her husband, there can be no loss of consortium. (Doc. 46 at 3.) The tort claims survive, so this argument necessarily fails.

### IV. Conclusion

ACS has not shown that the complaint is insufficiently pled or fails as a matter of law. The motion to dismiss (Doc. 46) is thus **DENIED**.

**ORDERED** in Fort Myers, Florida on October 9, 2025.

Kyle C. Dudek
United States District Judge